**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

_____

**SONIA HERNANDEZ,**

     **Plaintiff,**

**v.**                                  **CIVIL CASE NO. C-10-326**

**SIKORSKY SUPPORT SERVICES, INC.**

     **Defendant.**
_____

§
§
§
§
§
§
§
§
§
§
§

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion for Summary Judgment. (D.E. 21.)  Having considered Defendant's Motion, Plaintiff's Response, and the evidence presented to the Court, for the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.  INTRODUCTION

Sonia Hernandez (Plaintiff) has filed an employment discrimination claim, arguing that the evidence demonstrates a culture of gender discrimination at Sikorsky Support Services, Inc. (Defendant) where male clerks receive preferential treatment over females. (D.E. 23.)  Plaintiff alleges several instances of gender-based harassment, intimidation, abuse, and discrimination; however, she fails to provide sufficient evidence of an adverse employment action, or that the alleged discrimination was so severe or pervasive that it altered her employment conditions and created an abusive work environment.  Furthermore, Plaintiff provides insufficient evidence to

demonstrate that the discrimination she allegedly suffered was gender-based.  Consequently, the Court concludes that a reasonable jury could not return a verdict in Plaintiff's favor, and summary judgment is appropriate.

Plaintiff is a Logs and Records Clerk employed by Defendant in Corpus Christi, Texas. Defendant provides maintenance and repair, material management, and engineering support services on a contract basis for the United States Navy at the U.S. Naval Air Station in Corpus Christi.  The Logs and Records Department is responsible for tracking and documenting aircraft maintenance, logging aircraft flight hours, and reviewing the aircraft records for accuracy. Plaintiff and other Defendant employees are union members, and their benefits and working conditions are governed by a Collective Bargaining Agreement.  Plaintiff continues to be employed by Defendant.

Out of nine Logs and Records Clerks employed by Defendant in Corpus Christi, two are female: Plaintiff and her co-worker Denise Bussey.  Plaintiff was hired by Defendant on or about July 1, 2006.  From May 2007 through August 2009, Plaintiff was supervised by Kenneth Gorman, who served as Manager of the Logs and Records Department for Defendant. In September 2007, Mr. Gorman and Plaintiff were temporarily assigned to a work detachment in Las Cruces, New Mexico.  Plaintiff alleges that Mr. Gorman made an inappropriate statement during this time, but she does not remember the nature of the statement.  Plaintiff returned to Las Cruces in January 2008 for a second detachment, where she remained until March 2008. Mr. Gorman did not go on this second detachment.  Plaintiff claims that Mr. Gorman's attitude toward her changed when she returned to Texas in March 2008.

Plaintiff alleges that she was harassed, intimidated, abused, and discriminated against based on her gender.  Plaintiff alleges that Mr. Gorman repositioned her desk in order to harass

her; that Mr. Gorman intimidated and abused her by giving her the silent treatment; that Mr. Gorman purposefully deprived her of important information on upcoming shift openings; and that Mr. Gorman tricked her into not requesting an assignment on the preferred first shift so that he could select a less senior, male co-worker to fill the vacancy.

Plaintiff additionally alleges that she was discriminated against by being unfairly disciplined based on her gender:  In October 2008, Plaintiff received a written warning for her log books being several months out of date; in contrast, a male co-worker was not disciplined for making a single incorrect log book entry concerning the total number of aircraft landings. Plaintiff further alleges that her supervisors discriminated against her by failing to provide her passwords to access certain Excel spreadsheets, but that all the male workers had the passwords.

Moreover, Plaintiff alleges that she was discriminated against by being required to undergo safety training because she is a female.  In May 2009, Plaintiff injured her back after lifting two boxes of records.  When she reported the injury, Plaintiff received safety training, which she claims her male co-workers never received when injured.  In May or June 2010, Plaintiff additionally alleges she was discriminated against by not being notified of an opening for a managerial position for Defendant, yet several less senior male employees were asked to apply.  Last, Plaintiff alleges that the company's enforcement of its personal appearance policy was discriminatory because it was more strictly enforced against women than men.

After first addressing evidentiary matters, the Court considers Plaintiff's allegations of disparate treatment individually as separate, adverse employment action claims. (*See* D.E. 23 at 16–23.)  Thereafter, the Court considers the totality of the circumstances as a single hostile work environment claim.  The Court finds insufficient evidence to support an inference of gender discrimination, as Plaintiff's briefing and exhibits consist of self-serving and conclusory

allegations or inadmissible hearsay.  Furthermore, even if the Court were to conclude that there

is sufficient evidence for a reasonable jury to find that Plaintiff was subjected to unwanted

gender-based discrimination or harassment, the discrimination and harassment Plaintiff

complains of is not actionable.  There is insufficient evidence that the alleged discrimination and

harassment affected a term, condition, or privilege of her employment, or that it was so severe or

pervasive as to create a discriminatorily hostile or abusive work environment, as required by law.

Consequently, Plaintiff has failed to carry her burden to present evidence of a prima facie case of

gender discrimination, and Defendant is entitled to an entry of summary judgment in its favor.

## II.    PROCEDURAL HISTORY

Plaintiff filed an EEOC Charge of Discrimination against Defendant on November 6,

2008 alleging gender discrimination and retaliation. (D.E. 23-9.)  On June 11, 2010, the EEOC

made a cause determination on the basis of sex (female). (D.E. 23-6.)   Plaintiff filed her

Complaint in this Court on October 14, 2010 (D.E. 1) and her First Amended Complaint on

June 1, 2011. (D.E. 14.)  Defendant filed a Motion for Summary Judgment on August 15, 2011

(D.E. 21) to which Plaintiff responded on September 4, 2011 (D.E. 23).   Defendant filed a

Motion for Leave to File its Reply on October 5, 2011 (D.E. 30), which was denied.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a).   In reaching its decision, the Court must consider the affidavits,

depositions, declarations, stipulations, and other documents presented to the Court in the light

most favorable to the non-movant. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451

(5th Cir. 2002).  The substantive law identifies which facts are material. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Judwin Props., Inc., v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992).

The movant has the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to a judgment as a matter of law. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  The burden then shifts to the non-moving party to demonstrate that summary judgment is not appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Rivera*, 349 F.3d at 247; *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In meeting its burden, the non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material, controverted facts precluding summary judgment. *Anderson*, 477 U.S. at 248–49.  Additionally, the non-movant's burden is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *see also Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment").  Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex*, 477 U.S. at 322–23.  Where the non-movant fails to present evidence to support his or her claims, there can be no genuine issue of material fact because a complete failure of proof on an essential matter for which the non-movant bears the burden of proof renders all other issues immaterial. *Id*. at 323.

## IV.   SUMMARY JUDGMENT EVIDENCE

On summary judgment, the Court must consider the affidavits, depositions, declarations, stipulations, and other documents presented to the Court in the light most favorable to the non-movant. *Caboni*, 278 F.3d at 451.  However, in reaching its decision, the Court may not consider evidence that would be inadmissible at trial: "Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial . . . ." *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 192 (5th Cir. 1991) (quoting *Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir. 1990)).

This does not require the parties to produce evidence in a form that would be admissible at trial—affidavits and declarations by those competent to testify on the matters stated and setting out facts admissible in evidence are acceptable forms of evidence on summary judgment. FED. R. EVID. 56(c)(4); *Thomas v. Atmos Energy Corp.*, 223 Fed. App'x 369, 373–74 (5th Cir. 2007).  On the other hand, unsubstantiated hearsay evidence may not be considered in support of a motion for summary judgment, as such evidence does not suffice to raise a genuine issue of material fact. *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 Fed. App'x 159, 161–62 (5th Cir. 2008); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) ("Evidence inadmissible at trial cannot be used to avoid summary judgment").  Similarly, "[i]t is well-established that unauthenticated documents cannot be considered in support of a motion for summary judgment."

*United States v. Heerwagen*, 1993 WL 185724, *4, n. 7 (5th Cir. 1993); *see also Duplantis*, 948 F.2d at 192.

Plaintiff objects to Mr. Gorman's Declaration (D.E. 21-3) as unverified and unsworn. Plaintiff cites to no case law or statute to support this assertion. Federal Rule of Civil Procedure 56(c)(4) requires that an affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Declaration satisfies this standard, and Plaintiff does not argue otherwise.

Furthermore, the Declaration is signed and dated by Mr. Gorman "under penalty of perjury under the laws of the United States that the foregoing is true and correct." (D.E. 21-3 at 6.) Federal law requires the following:

> Wherever, under any law of the United States or under any rule . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated in substantially the following form: . . . "I declare . . . under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. . . ."

28 U.S.C. § 1746. The Declaration clearly satisfied this standard as well, and Plaintiff presents no contrary authority.

Plaintiff's only complaint appears to be that Mr. Gorman's Declaration is not notarized. However, "[u]nnotarized affidavits are admissible when the veracity of the statement is sworn to under penalty of perjury." *Noack v. YMCA of Greater Houston Area*, 418 Fed. App'x 347, 353 (5th Cir. 2011) (citing 28 U.S.C. § 1746(2)). Accordingly, Plaintiff's objection to Mr. Gorman's Declaration is overruled.

Plaintiff further objects that the documents cited to and authenticated by Mr. Gorman in his Declaration are inadmissible as such documents "should have been produced by the appropriate Defense witnesses to authenticate the contents of each Exhibit." (D.E. 23 at 4.)  Mr. Gorman adequately introduces and authenticates each document:  He indicates in his Declaration that he has been employed with Defendant in a management position since 2007, describes each document and its source in detail, and establishes that each document constitutes a business record of Defendant. *See* FED. R. EVID. 803(6) (providing hearsay exception for records "kept in the course of a regularly conducted business activity"); FED. R. EVID. 901 ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."). Additionally, it appears that each document can be presented in a form that would be admissible in evidence at trial. *See* FED. R. CIV. P. 56(c)(2); *Duplantis*, 948 F.2d at 192.  Consequently, Plaintiff's global objection to the exhibits identified and authenticated within Mr. Gorman's Declaration are overruled.  The Court notes, however, that parts of Defendant's exhibits constitute inadmissible hearsay if offered for the truth of the matter asserted and will not be considered by the Court for this purpose. (*See, e.g.*, D.E. 21-8 at 5.)

A review of Plaintiff's exhibits reveals that several do not satisfy the summary judgment evidentiary requirements and thus cannot be considered as proper summary judgment evidence. While the majority of Plaintiff's deposition statements (D.E. 23-2, 23-3, and 23-4) are admissible, certain answers must be disregarded as they constitute inadmissible hearsay. *See Arora*, 294 Fed. App'x at 161–62.  Additionally, any imbedded hearsay offered for the truth of the matter asserted in other documents will not be considered; however, the documents may

be considered for other limited purposes, such as, exhaustion of administrative remedies. (*See, e.g.*, D.E. 23-6.)

Attachments 7 and 17 to Plaintiff's Response (D.E. 23-7 and 23-17) will not be considered, as they do not constitute admissible evidence, and Plaintiff has not demonstrated that they could be presented in an admissible form. The documents fail to identify the declarant or their source, the statements are not made under penalty of perjury, and the statements contain several instances of hearsay.

Attachment 8 to Plaintiff's Response (D.E. 23-8), titled "Confidential Witness Statement," is also inadmissible on summary judgment. It is dated, and the author is identified as Shelley Franco, Witness/Investigator; nevertheless, the declaration is not authenticated, it is not sworn under penalty of perjury, and the statement contains numerous hearsay and double hearsay statements.

Attachment 10 to Plaintiff's Response (D.E. 23-10[1]), which appears to be a statement by Plaintiff, similarly does not constitute proper summary judgment evidence. While dated and signed, this statement is unauthenticated, and it was not made under penalty of perjury, as required for a declaration or affidavit on summary judgment. *See* 28 U.S.C. §1746; *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.1988) ("It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."). Moreover, the statement contains several instances of hearsay. As Plaintiff has failed to demonstrate that the statement sets out facts that would be admissible in evidence, the Court will not consider this exhibit on summary judgment. FED. R. CIV. P. 56(c)(4).

---

[1] The statement is nearly identical to part of an exhibit offered by Defendant as a business record. (*Compare* D.E. 23-10 *with* D.E. 21-8.) In its entirety, the document is admissible as a business record to demonstrate, for instance, exhaustion of administrative remedies; yet, when offered for the truth of the matters asserted therein, it is hearsay and not proper summary judgment evidence.

## V.     ANALYSIS

In Plaintiff's First Amended Complaint, she asserts claims against Defendant under Title VII of the Civil Rights Act of 1964:  Plaintiff alleges that she "was, and continues to be, subjected to harassment and discrimination which permeates her work environment based on her gender." (D.E. 14 at 6.)  It appears that Plaintiff alleges a hostile work environment claim, as opposed to individual adverse employment action claims.  Yet, in her Response, Plaintiff claims that there were "at least six disparate treatment actions" taken against her by her supervisors. (D.E. 23 at 16.)  Plaintiff acknowledges that if each act is considered in isolation, it may not constitute an adverse employment action; however, she asserts that each of these acts support her allegation of a culture of discrimination. (D.E. 23 at 20, 22–24, 26–28.)  Additionally, Plaintiff rejects Defendant's attempt to separate her claims, asserting that in an action alleging a culture of discrimination, individual claims generally are not separately actionable. (D.E. 23 at 28.)

As it is not clear whether Plaintiff claims only a hostile working environment, the Court analyzes Plaintiff's allegations under both theories.  The Court considers Plaintiff's claims individually and cumulatively. *See Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003) (addressing adverse employment action claims and hostile work environment claims separately and applying different legal standards); *Wyatt v. Hunt Plywood Company, Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

### A.     Individual Adverse Employment Action Claims

Plaintiff alleges the following six discriminatory acts by Defendant: (1) during the June 2008 shift rotation she was discriminated against because she was not notified of an opening on the first shift and a less senior worker was selected to fill a temporary vacancy; (2) in October 2008, she was given a written warning for a log book error, but her male co-worker was not

disciplined for a more severe infraction; (3) sometime in 2009, Plaintiff was not provided passwords to certain Excel spreadsheets, but her male co-workers were provided the passwords; (4) in May 2009, Plaintiff was given safety training, after injuring herself at work, which was never required when a male co-worker injured himself; (5) sometime in May or June 2010, Plaintiff was not informed of an open managerial position, even though male employees with less seniority were asked to apply; and (6) sometime in August or September 2009, the company's personal appearance policy was more strictly enforced against females than males. (D.E. 14 ¶¶ 7–24; D.E. 23 at 16–28.)  Defendant requests that the Court enter summary judgment in its favor on the individual adverse employment action claims because Plaintiff's claims are time barred and/or outside the scope of her EEOC Charge, and there is insufficient evidence for a reasonable jury to find in Plaintiff's favor. (D.E. 21 at 19–31.)

1.    *Whether Plaintiff's Claims Are Time Barred and/or Outside the Scope of the EEOC Charge of Discrimination*

Before filing an employment discrimination suit in federal court, Title VII requires that a plaintiff satisfy the filing requirements of 42 U.S.C. § 2000e–5(e)(1), which mandates that a plaintiff file a charge with the EEOC within 300 days of the unlawful employment practice; otherwise, the claim is barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. at 101, 109 (2002).  For discrete acts, the Court looks at the date the act occurred in determining whether recovery is time barred.  *Id.* at 110.

Additionally, employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). The suit filed may address only the discrimination stated in the EEOC charge itself or developed in the course of a reasonable EEOC investigation of that charge.  *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 711-712 (5th Cir. 1994).

In the case at hand, Plaintiff filed an EEOC Charge of Discrimination on November 6, 2008. (D.E. 23-9.)  Any discriminatory acts that occurred before January 11, 2008 are outside of the 300-day time period for filing a Charge of Discrimination with the EEOC.  Additionally, any discriminatory acts that occurred after Plaintiff's EEOC Charge of Discrimination was filed on November 6, 2008 are procedurally barred as outside the scope of the EEOC Charge.  Plaintiff has failed to show that these subsequent discriminatory acts were developed in the reasonable course of the EEOC investigation.  Plaintiff's claim of discriminatory shift scheduling in June 2008 and her claim that she was more harshly disciplined than a similarly situated male co-worker on October 21, 2008 fall within the actionable time period.  Plaintiffs other individual adverse employment claims are dismissed as time barred or outside the scope of the EEOC Charge of Discrimination.

### 2. *Whether Plaintiff Established a Prima Facie Case of Discrimination*

In an adverse employment action claim, the plaintiff has the initial burden of establishing a prima facie case of gender discrimination, which requires her to demonstrate the following: (a) that she is part of the protected class; (b) that she was subject to an adverse employment action; and (c) that she was treated less favorably than similarly situated male employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Abarca v. Metropolitan Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005).  Under *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998), a tangible, adverse employment action is defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  The Fifth Circuit has defined an adverse employment action as a change that makes one's job "objectively worse." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 770 (5th Cir. 2001).  Moreover, "[c]ircuit

precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004).

Defendant argues that Plaintiff's discriminatory shift scheduling and discipline claims must be dismissed as they do not constitute adverse employment actions.  The Court concludes as a matter of law that merely placing an employee on a less desirable shift or giving an employee a written reprimand that does not result in a change in job status, responsibilities, or benefits fails to rise to the level of an adverse employment action. *See Ellis v. Principi*, 246 Fed. App'x 867, 870 (5th Cir. 2007) (concluding that allegation of being given a less favorable work assignment than other similarly situated employees "is insufficient to sustain a disparate treatment claim"); *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657–58 (5th Cir. 2002) (disciplinary reprimands do not constitute adverse employment actions), *overruled on other grounds*, *Burlington N. & Santa Fe Ry v. White*, 548 U.S. 53, 66 (2006); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (concluding that a change in working hours "does not rise to the level of an adverse employment action").  The Court therefore grants summary judgment with regard to Plaintiff's discrete claims of gender discrimination as not individually constituting adverse employment actions.

### B.    Hostile Work Environment Claim

To prevail on her hostile work environment claim, Plaintiff must present evidence of the following: "(1) Sexually discriminatory intimidation, ridicule and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and

(4) create an abusive working environment." *DeAngelis v. El Paso Municipal Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir. 1995) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)); *see also Frank*, 347 F.3d at 138; *Ramsey v. Henderson*, 286 F.3d 264, 270 (5th Cir. 2002).  In hostile work environment claims, the Supreme Court has recognized that the protections of Title VII are not limited to adverse employment actions that result in "economic" or "tangible" forms of discrimination, but that, where the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult,' " the employer may be found to have violated Title VII. *Harris*, 510 U.S. at 21.

In applying this criteria, the totality of the circumstances must be considered:  "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.  Moreover, Plaintiff must not only subjectively perceive the harassment as severe and pervasive, but her subjective perception must be objectively reasonable. *Frank*, 347 F.3d at 138.

Ultimately, Title VII's goal is "to enforce equality, not preference." *DeAngelis*, 51 F.3d at 583.

> A hostile environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace.  Any lesser standard of liability, couched in terms of conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve the goal of equality.  In fact, a less onerous standard of liability would attempt to insulate women from everyday insults as if they remained models of Victorian reticence.  A lesser standard of liability would mandate not equality but preference for women: it would create incentives for employers to bend over backwards in women's favor for fear of lawsuits.  Now that most American women are working outside the home, in a broad range of occupations and with ever-increasing responsibility,

14

> it seems perverse to claim that they need the protection of a preferential standard.  The careful, heightened phrasing of a hostile environment claim, enforceable where working conditions have palpably deteriorated because of sexually hostile conduct, aims to enforce equality, not preference.

*Id*.  By requiring that an employer's discriminatory conduct be sufficiently severe or pervasive as to create an objectively hostile work environment, the Fifth Circuit and Supreme Court have limited Title VII suits to recognizable, serious, and chronic cases of abuse. *See Harris*, 510 U.S. at 21.

Defendant argues (1) that Plaintiff's hostile work environment claim is time barred, and (2) that Plaintiff failed to present enough evidence to establish that the alleged harassment is sufficiently severe or pervasive to support a hostile work environment claim. (D.E. 21 at 14–19.)

    *1.    Timing*

A hostile work environment claim requires the examination of the cumulative effects of an employer's alleged discriminatory acts occurring over an extended period of time; therefore, related acts, that would otherwise be procedurally barred for failure to timely file an EEOC Charge of Discrimination or for failure to exhaust administrative remedies, are actionable as part and parcel of a hostile work environment claim. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115–17. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 117.  Thus, where "the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim," and a claim is timely provided it was filed within 300 days of any act that contributed to the hostile work environment. *Id*. at 118.  Plaintiff timely filed an EEOC Charge of Discrimination for some of the stated discriminatory acts that allegedly contributed to the

creation of a hostile work environment. (D.E. 23-9.)   Therefore, Plaintiff's hostile work environment claim is not time barred.

> 2.   *Whether, Taken as a Whole, the Alleged Harassment, Intimidation, and Preferential Treatment Was Sufficiently Severe and Pervasive to Support a Gender-Based Hostile Work Environment Claim*

Defendant argues that Plaintiff failed to present enough evidence to establish that the alleged harassment was sufficiently severe or pervasive to support a hostile work environment claim. (D.E. 21 at 14–19.)   The Court examines each alleged incident of harassment or discrimination individually, considering the evidence supporting each allegation, as well as the severity of each incident (subsections a and b); then, it considers whether, considering the totality of the circumstances, Plaintiff's evidence is sufficient for a reasonable jury to find in her favor (subsection c).

### a.   Allegations of Gender-Based Harassment and Intimidation

At the heart of Plaintiff's complaint is her allegation that, in September 2007, Plaintiff's supervisor, Kenneth Gorman, made an inappropriate comment while they were on temporary assignment in Las Cruces, New Mexico. (D.E. 14, ¶ 9.)   Plaintiff alleges that Mr. Gorman's attitude toward her changed when she returned from Las Cruces in March 2008—that he began to harass, intimidate, and threaten her. (D.E. 14, ¶¶ 10–11.)   In its Motion for Summary Judgment, Defendant argues that there is a complete lack of admissible evidence that the alleged incidents of intimidation and harassment were sexual in nature or gender-based. (D.E. 21 at 15–17.)   Plaintiff responds that she has produced "minimally sufficient evidence" for a reasonable jury to conclude that she was discriminated against based on her gender. (D.E. 23 at 11–15.)

Plaintiff cites to her deposition, arguing that there exists sufficient evidence for a reasonable fact finder to conclude that the incidents of workplace harassment were based on her

gender. (D.E. 23 at 11–15.)   Plaintiff's deposition, however, fails to demonstrate that the comment was gender-based or sexual in nature.

> Q.    And at this point in time you don't remember what Mr. Gorman allegedly told you in Las Cruces?
>
> A.    No.
>
> Q.    But whatever the comments were, you just chose to ignore them?
>
> A.    Yes.
>
> Q.    And you didn't acknowledge them?
>
> A.    No.
>
> Q.    You didn't tell him that those comments were offensive to you?
>
> A.    No.
>
> Q.    And he never again made any similar comments to you?
>
> A.    No.
>
> Q.    Ms. Hernandez, where were you when Mr. Gorman made these comments to you?
>
> A.    Kind of in the doorway, like if I was standing right here (indicating).
>
> Q.    At work or in the hotel or –
>
> A.    Oh, it was at work.  We had a hangar there.
>
> Q.    What do you remember about these comments or this one comment?
>
> A.    I just remember, you know, thinking, I can't believe he said that, he's my supervisor.
>
> Q.    Do you remember anything else other than that?  What was the comment about?  What was the conversation you were having with him about?
>
> A.    I don't remember.  You know, I'd be lying if I said that I remembered.  I don't.  I never have.  I just thought it was inappropriate.
>
> Q.    Was he telling a joke?  Was it sort of an off-color joke that he was making, do you know?  Do you remember?
>
> A.    I don't know.

(Pl.'s Dep. 23:21–25:4.)   Plaintiff fails to present a scintilla of evidence that Mr. Gorman's comment was gender-based or sexually inappropriate so as to contribute to a hostile work environment, or that she reacted to the comment in a way that might have caused Mr. Gorman to retaliate against her.

Plaintiff complains of other acts of harassment and intimidation, but there is a similar lack of evidence to make the complaints actionable.   Plaintiff alleges that Mr. Gorman repositioned her desk so that it faced in a different direction and he could watch her. (*Id*. at 28:19–29:12 and 129:18–130:14.)   Plaintiff states that she arrived at work one day to discover that her desk had been moved.   While Plaintiff alleges that hers was the only desk moved on that particular day, she acknowledges that, during this general time period, several desks were rearranged to prevent employees from talking with each other. (*Id*. at 29:19–30:16.)

Notably, this alleged harassment was not accompanied by any inappropriate statements or gestures.   To the contrary, Plaintiff indicates that Mr. Gorman did not say anything to her. (*Id*. 34:10–11, 130:11–12.)   Plaintiff alleges that this "silent treatment" constituted a form of non-physical abuse and intimidation. (D.E. 23 at 14–15.)   Plaintiff further alleges that she requested the third, or graveyard shift, to get away from Mr. Gorman's abusive behavior (D.E. 14, ¶ 15; Pl.'s Dep. 64:5–7. 144:20–21).   Mr. Gorman then began sporadically showing up at 3:00 a.m. to intimidate her. (Pl.'s Dep. 34:12–14.)   Yet, when asked why this was intimidating, Plaintiff states, "You would just have to know what was going on, other than that, and being in that scenario to understand." (*Id*. at 34:21–23.)   She continues, "Like I said, you just have to be there. . . .   It's just a feeling you get . . . ." (*Id*. at 35:23–25.)

Plaintiff completely fails to provide any evidence that moving her desk or giving her the silent treatment constituted inappropriate, gender-based harassment or intimidation, or that Mr.

Gorman's motivation for coming to work at 3:00 a.m. was to intimidate or harass her. Subjective beliefs, conclusory allegations, and unsubstantiated assertions are insufficient to survive summary judgment. *Celotex*, 477 U.S. at 325.   On summary judgment, Plaintiff is required to go beyond her pleadings and offer specific facts demonstrating a genuine issue for trial. *Id*. at 324.  Plaintiff did not carry her burden with regard to her allegations of gender-based harassment and intimidation.

b.      Allegations of Preferential Treatment for Male Employees

Plaintiff additionally alleges several acts of favoritism toward Defendant's male employees with regard to shift scheduling, employee discipline, access to password-protected spreadsheets, safety training, notice regarding an opening for a managerial position, and the company's personal appearance policy. (D.E. 14 ¶¶ 13–22, 26; D.E. 23 at 17–28.)  In its Motion for Summary Judgment, Defendant argues that Plaintiff has failed to produce sufficient evidence to establish a discrimination claim and counters with its own evidence demonstrating that the alleged incidents of discrimination were not gender-based and/or were not severe enough to be actionable. (D.E. 21 at 19–31.)

First, Plaintiff alleges that she was intentionally kept off of the first shift (daytime shift)[2] due to her gender.  Plaintiff asserts that she made it clear to Mr. Gorman that she wished to work the first shift, but in June 2008, this shift was temporarily given to a male employee with less seniority. (D.E. 23 at 17–18.)  Plaintiff claims that this action was contrary to the company's Collective Bargaining Agreement with her union.  Yet, the shift preference forms that Plaintiff completed almost invariably indicate that she preferred *not* to work the first shift, and for June 2008, in particular, Plaintiff indicated that the first shift was least preferred. (D.E. 21-5

---

[2] Defendant maintains twenty-four-hour-a-day operations, rotating its employees through three separate shifts.  The first shift, or "daytime shift," is generally preferred.  The second and third shifts cover the nighttime and early morning hours.

at 1.)  In contrast, Antonio Garcia, the junior, male co-worker who was moved to the first shift for June 2008, elected the first shift as his first preference. (D.E. 21-3.)

Plaintiff admits that she did not choose the first shift as her first preference on the forms, but explains her reason for doing so as being because the two logs and records clerks with seniority would be given priority and would choose the first shift.  The clerks knew prior to indicating their shift preferences that there were only two first-shift openings, and the less senior employees would then bypass the first shift in choosing their shifts. (Pl.'s Dep. 146:11–25, 147:1–5.)

Plaintiff asserts that she was repeatedly deceived by Mr. Gorman about the number of positions available on the first shift (D.E. 23 at 20); however, she fails to present any admissible evidence to support this claim.  Plaintiff's deposition statements indicate that she liked to work the third shift to get away from Mr. Gorman and because she attended Del Mar College. (Pl.'s Dep. 64:5–65:13, 144:20–21.)  The shift preference forms signed by Plaintiff indicate that the first shift was rarely her first choice, and Plaintiff provides no other evidence indicating that she made known her desire to be transferred to the first shift.  When questioned about her shift preference forms (D.E. 21-5), Plaintiff indicated that she was consistently given the shift she requested and did not have any complaints about the shifts she was assigned. (Pl.'s Dep. 54–63.)

Had Plaintiff indicated her preference for the first shift, under the Union's Collective Bargaining Agreement, Mr. Gorman would have been required to place her on the first shift to replace Victor Nava or Denise Bussey whenever they were unavailable.[3] (Gorman Decl. ¶ 7.) Still, Plaintiff maintains that she was discriminated against by not being consulted whenever an

---

[3] Victor Nava and Denise Bussey were the only two employees in the logs and records department senior to Plaintiff. They were also the only two people who worked the first shift. (Pl.'s Dep. 46:16–21.)  Therefore, in order for Plaintiff to be put on first shift, Defendant would have to add another position, or Mr. Nava or Ms. Bussey would have had to leave or elect a different shift.

opening on the first shift became available. (*Id.* at 50:22–52:23.)   The Court concludes that Plaintiff failed to present sufficient evidence for a reasonable jury to conclude that the shift scheduling constituted a form of gender-based discrimination.

Next, Plaintiff argues that the written warning she received on October 2, 2008 demonstrates intentional discrimination against her as a female employee because her male co-worker, Raul Vela, was not reprimanded, verbally or with a written warning, for a more serious offense. (D.E. 23 at 21.)   Defendant does not dispute the variance between the workers' discipline.   Defendant does, however, point out that Mr. Vela's supervisor, Juan Womack, was found to be responsible for Mr. Velas's incorrect log entry and did receive a verbal reprimand. (Gorman Decl. ¶ 11.)

The Navy had labeled Mr. Vela's log book error as a Level II, Major Non-Conformance (D.E. 23-14), whereas, Plaintiff's log book error was labeled as a Level I, Minor Non-Conformance. (D.E. 23-11.)   Mr. Vela's log book error consisted of a single error:   a discrepancy of 5,036 between the number of aircraft landings recorded and the actual number of landings that occurred. (D.E. 23-14, 21-14.)   This is a substantial difference.   Defendant determined that the root cause of Mr. Vela's mistake was a clerical error, with failure by the clerk and his supervisor to verify the figures, which would have quickly revealed the error so that it could be corrected. (D.E. 21-4.)   In Plaintiff's case, her log books were found to be four months out of date, and she failed to report this to her supervisor. (D.E. 21-10.)

While the Navy classified Mr. Vela's log book data entry error as a "Level II, Major Non-Conformance," Defendant apparently found it a less serious disciplinary matter compared to Plaintiff's chronic failure to timely complete her work and failure to disclose her backlog. Plaintiff argues that the disparate treatment was gender-based.   The difference, however, could

have been due to the nature of the mistakes.  It appears that Mr. Vela's mistake occurred because he accidently transposed some numbers while making an entry; whereas, Plaintiff's mistake resulted from a failure to complete her assigned work for a period of several months. (Pl.'s Dep. 73:18–20; Gorman Decl. ¶ 11; D.E.21-10; D.E. 23-14.)

There is no evidence indicating why the Navy classified the errors in the way that it did, or the significance of the different classifications.  To demonstrate disparate treatment, Plaintiff must show that Defendant gave preferential treatment to another employee "under nearly identical circumstances." *Okoye v. Univ. of Tex. Houston Helth Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001).  Plaintiff's summary judgment evidence fails to demonstrate that the two employees were similarly situated.  Thus, Plaintiff has failed to present evidence establishing an element on which she will bear the burden of proof at trial.

Next, Plaintiff complains that she was denied access to certain spreadsheet passwords based on gender (all the men in the office were allegedly provided the password, but she was not), and that in order to complete her job, a couple times a week, she was required to go to one of her supervisors to request that they make the necessary corrections to the spreadsheets. (D.E. 23 at 23; Pl.'s Dep. 90:24–92:7.)  Defendant acknowledges that a portion of the flight hours spreadsheet was password protected in 2009 to maintain the integrity of the formulas and minimize mistakes. (Gorman Decl. ¶ 12.)  Plaintiff's evidence that only men were provided the password consists entirely of hearsay statements from her male co-workers, who indicated to her that they had the password. (Pl.'s Dep. 93–97.)  Consequently, Plaintiff failed to provide sufficient evidence upon which a reasonable jury could find the passwords were denied based on gender discrimination.

Plaintiff further complains that, following a workplace injury in May 2009, she was unfairly subjected to safety training based on her gender. (D.E. 23 at 24.)  Plaintiff injured her back lifting boxes, and a few days after turning in her accident report, the safety manager, Mr. Ernst Land, came to talk to her. (Pl.'s Dep. 106:1–23.)  Plaintiff claims that Mr. Land scolded her for attempting to lift the boxes so high. (*Id*. at 107:1–6.)  Sometime later, Plaintiff went to Mr. Land's office to receive instructions on proper lifting technique. (*Id*. at 107:10–13.)

Plaintiff complains that she was discriminated against because her male co-workers were never scolded or counseled about safety when they injured themselves. (D.E. 23 at 24–25.) Plaintiff's evidence that her male co-workers were not given any training consists solely of her deposition statements concerning conversations she had with them. (Pl.'s Dep. 110:2–111:8.) This is hearsay and will not be considered by the Court.  Moreover, Plaintiff is not sure if Mr. Land had been working at the company at the time her male co-workers were injured. (*Id*. at 109:18–20.)  Thus, Plaintiff has also failed to demonstrate that she and her male co-workers were similarly situated.  Consequently, Plaintiff has failed to present sufficient evidence from which a reasonable jury could find the safety training she received constituted gender-based discrimination.

Next, Plaintiff complains that she was given less preferential treatment based on her gender in May or June 2010 when not advised of a managerial position with Defendant, while other male employees with less seniority were asked to apply for the position. (D.E. 14 ¶ 14; Pl.'s Dep. 121:3–122:4.)  By not being advised of the job opening, Plaintiff argues that it was predetermined that a male would obtain the position. (D.E. 23 at 26.)  However, to establish a prima facie case of gender discrimination for failure to promote or hire, Plaintiff must first demonstrate that she was qualified for the management position. *See St. Mary's Honor Center v.*

*Hicks*, 509 U.S. 502, 506 (1993) (citing *McDonnell Douglas*, 411 U.S. at 802).  The Logs and Records Supervisor Position required at least two years experience directing personnel and managing equipment and material assets. (D.E. 21-15.)  Plaintiff admits that she did not meet this requirement. (Pl.'s Dep. 122:17–19.)  Furthermore, Plaintiff previously declined an offer to apply for a similar management position because she did not want to deal with personnel issues and because it was on the second shift. (*Id*. at 118:9–119:17, 120:6–9.)

Still, Plaintiff argues that even though she "might not have been qualified for the position or might not have wanted the position, . . . [she] never even received the opportunity to be declined for the position or to decline the position on her own accord, because she was never informed that a managerial position was available or would become available." (D.E. 23 at 26.) Yet, Plaintiff cites to no case law supporting a gender discrimination claim based on a failure to inform an employee about a job opening she was not qualified for, and Plaintiff has failed to present any evidence indicating that she was entitled to notification, that she was qualified for the position, or that she would have applied for the position had she been informed of the opening. As a result, the Court concludes that a reasonable jury could not find that Defendant's alleged failure to inform Plaintiff of the job opening constituted gender-based discrimination.

Lastly, Plaintiff argues that she was discriminated against due to Defendant's gender-based enforcement of its personal appearance policy. (D.E. 14, ¶ 22; D.E. 23 at 27.)  For a time, Defendant implemented a Foreign Object Damage (FOD) Policy that prohibited men and women from wearing jewelry or having their hair past their collars, as this could pose a potential hazard for aircraft or workers on the flight line or in maintenance areas. (Pl.'s Dep. 112–115.)  After three or four months, the policy was rescinded for employees in the administrative offices. (*Id*. 113:25–114:7)

In her deposition, Plaintiff states several times that this is not part of her lawsuit. (*Id*. at 112:1–113:5.)  However, in her Response, Plaintiff cites to her Exhibit N (D.E. 23-17), which the Court has refused to consider as it is not competent summary judgment evidence. Plaintiff has thus waived and otherwise failed to present sufficient evidence to support her claim of gender discrimination in the enforcement of Defendant's personal appearance policy.

<u>c.</u>      Totality of the Circumstances

Plaintiff argues that Defendant's actions, when viewed as a whole, demonstrate a culture of discrimination and the existence of a hostile work environment toward Plaintiff and the other female employees. (D.E. 23 at 28.)  Plaintiff's Response, however, falls short of establishing a genuine issue of material fact.  Plaintiff's deposition statements merely echo the conclusory allegations and unsubstantiated assertions of her First Amended Complaint, and she provides insufficient evidence to support her allegations of gender-based harassment, intimidation, and favoritism.  Moreover, Plaintiff has failed to demonstrate that the alleged harassment, intimidation, and gender bias were so severe and pervasive that they permeated the workplace and created an abusive working environment.  In the end, Plaintiff's subjective belief that there was a hostile work environment is insufficient to survive summary judgment. Accordingly, considering the totality of the circumstances, there is insufficient evidence for a reasonable jury to return a verdict in Plaintiff's favor, and summary judgment must be granted in Defendant's favor.

## VI.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff failed to meet her burden on summary judgment of presenting sufficient evidence to establish a prima facie case of

employment discrimination.  Consequently, the Court concludes that a reasonable jury could not return a verdict in Plaintiff's favor, and summary judgment in favor of Defendant is appropriate.

**THEREFORE**, Defendant's Motion for Summary Judgment (D.E. 21) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

**ORDERED** this 28th day of October 2011.

**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**